UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN EDWARD MITCHELL,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>DERRAL ADAMS, Warden,<br><br>　　　　　Respondent. | 1:10-cv-01342-LJO-MJS<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS |

　　　　Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have not consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 9, 14.)

I.　　**PROCEDURAL BACKGROUND**

　　　　Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Pasadena Superior Court of California, following his conviction by jury trial on April 17, 1998, of residential burglary. (Answer, ECF No 16-1 at 3.) Petitioner was sentenced to eighty-five years to life in state prison. (Id.)

　　　　Petitioner filed the instant federal habeas petition on July 26, 2010. Petitioner challenges a 2009 prison disciplinary proceeding finding him guilty of resisting staff resulting in the use of force. (Pet., ECF No. 1.) Petitioner claims that his due process rights were violated when he was denied his requested witness at his disciplinary hearing. (Id.)

On August 5, 2008, two officers were transporting Petitioner to a new cell. Petitioner physically resisted, requiring the deputies to use physical force. (Answer, Ex. 5(d), p. 1.) At his disciplinary hearing on April 21, 2009, Petitioner attempted to call Inmate Smith as a witness. (Id.) Inmate Smith was paroled and unavailable to testify. (Id.) Petitioner stipulated that Inmate Smith would have testified that Petitioner did not resist the officers. (Id.) Petitioner was found guilty of resisting officers and lost 90 days of good time credit. (Id.)

On December 31, 2009, Petitioner filed a habeas petition in the Solano County Superior Court, which was denied on February 25, 2010. (Answer, Ex. 4.)

On March 8, 2010, Petitioner filed a writ of habeas in the California Court of Appeal for the First District. The appellate court summarily denied Petitioner's habeas petition on March 18, 2010. (Answer, Exs. 5-6.)

Petitioner filed the same claims in a petition to the California Supreme Court on April 7, 2010. The writ was denied on June 17, 2010. (Answer, Ex. 8.)

Respondent filed an answer to the petition on January 18, 2011, and Petitioner filed a traverse on February 15, 2011. (Answer & Traverse, ECF Nos. 16, 18.)

## II.  EXHAUSTION OF CLAIMS

A petitioner who is in state custody seeking a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo–Reyes, 504 U.S. 1 (1992) (factual basis).

In this case, Respondent asserts that Petitioner claims are not exhausted because Petitioner failed to exhaust his administrative remedies and the state courts denied his petitions on that ground by way of citing to re Dexter, 25 Cal.3d 921, 925 (1979), which signifies a failure to exhaust administrative remedies. (See Answer, Ex. 4.)

Rather than review the claim with regard to exhaustion, the Court shall address Petitioner's failure to exhaust administrative remedies with regard to procedural default. Furthermore, 28 U.S.C. § 2254(b)(2) states: "An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Thus, in light of judicial efficiency, the Court shall not address whether petitioner exhausted his state or administrative remedies.

### III.    **PROCEDURAL DEFAULT**

Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief rests on a state law ground that is independent of federal law and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989). Generally, the only state law grounds meeting these requirements are state procedural rules. However, the procedural basis of the ruling must be clear. Ambiguous reference to procedural rules is insufficient for invocation of procedural bar. Calderon v. United States District Court (Bean), 96 F.3d 1126, 1131 (9th Cir. 1996). Similarly, where the procedural and merits analysis are intermixed, it cannot be said that the procedural bar is independent of federal law, i.e., there is no plain statement of reliance on procedural bar. Harris, 489 U.S. at 260-62 (1989).

If there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner demonstrates: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law; or (2) a fundamental miscarriage of justice. Harris, 489 U.S. at 262. The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. McCleskey v.

Zant, 499 U.S. 467, 493-94 (1991). Examples of cause include showings "that the factual or legal basis for a claim was not reasonably available to counsel," "that some interference by officials made compliance impracticable," or "of ineffective assistance of counsel." Murray v. Carrier, 477 U.S. 478, 488 (1986). Prejudice is difficult to demonstrate:

> The showing of prejudice required under Wainwright v. Sykes is significantly greater than that necessary under "the more vague inquiry suggested by the words 'plain error.'" Engle, 456 U.S. at 135, 102 S. Ct. at 1575; Frady, supra, 456 U.S. at 166, 102 S. Ct. at 1593. See also Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). The habeas petitioner must show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, supra, at 170, 102 S. Ct. at 1596.

Murray v Carrier, 477 U.S. at 493-494 (1986).

Although different phraseology is used in the default context from that used in the ineffective assistance of counsel prejudice inquiry, as stated above, the ultimate application of the two prejudice inquiries is essentially similar - that is, whether the prejudice is sufficient to have undermined the reviewer's confidence in the result of the trial.

As discussed above, the California courts denied petitioner's habeas petition citing to In re Dexter, 25 Cal.3d 921 (1979) and Wright v. State of California, 122 Cal. App. 4th 659, 667 (2004), indicating that Petitioner failed to exhaust administrative remedies. In order for a claim to be procedurally defaulted for federal habeas corpus purposes, the opinion of the last state court rendering a judgment in the case must clearly and expressly state that its judgment rests on a state procedural bar. Harris, 489 U.S. at 263; Morales v. Calderon, 85 F.3d 1387, 1392 (9th Cir. 1996). In this case, the California state court decisions indicated that the decisions rested on a state procedural bar. Carter v. Giurbino, 385 F.3d 1194, 1197 (9th Cir. 2004) (one-sentence summary denial of petition incorporating unelaborated case citation sufficient for procedural default.)

The rule in California that inmates must exhaust administrative remedies is well established and has been applied since 1941. See Abelleira v. District Court of Appeal, 17

Cal.2d 280, 292, 109 P.2d 942 (1941). The rule was firmly established at the time of petitioner's default, and has been consistently applied. See Dexter, 25 Cal.3d at 925; Wright, 122 Cal. App. 4th at 665. In addition, Dexter is based on state law and is independent of federal law. See Carter, 385 F.3d at 1197-98 (a state rule is independent where "[n]o federal analysis enters into the [rule's] equation"). Thus, the rule in Dexter is an adequate and independent state ground that bars the undersigned from reaching the merits of petitioner's claims.

The Court must next consider cause and prejudice. As discussed above, Petitioner's failure to exhaust administrative remedies was apparently based on his failure to timely file a second level inmate appeal. (Mot. to Dismiss, Ex. 4.) While the undersigned may be sympathetic to Petitioner's inadvertence, because no external factor impeded Petitioner's ability to exhaust administrative remedies he has not demonstrated cause. Because Petitioner has not demonstrated cause, there is no need to reach the issue of prejudice.

After reviewing the entire record, no fundamental miscarriage of justice will occur if Petitioner's claims are not considered.

Although Petitioner's claims are procedurally defaulted, the Court nevertheless shall review the merits of Petitioner's claims.

## IV.    DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered a violation of his right to due process as guaranteed by the U.S. Constitution. In addition, Petitioner was confined in Kings County, which is located within the jurisdiction of this court, at the time of filing the present petition. 28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction

over the action.

### B. Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

#### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law"

requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an "unreasonable application of "federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419 (2009) (quoting Richter, 131 S. Ct. at 786).

> 2.      Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning."  Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by

showing there was no reasonable basis for the state court to deny relief." Id. (" This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id.  To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787.  It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the

error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

## IV. REVIEW OF PETITION

### A. Due Process

The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. See id. at 557 ("It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior."); id. ("[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance …."); id. at 558 (holding that "[s]ince prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed").

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff, 418 U.S. at 539. Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v.

Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984)).

When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.

The right to call witnesses at a disciplinary hearing is limited. Baxter v. Palmigiano, 425 U.S. 308, 322 (1976). It is subject to "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." Id. at 321 (citing Wolff, 418 U.S. at 556). For instance, prison officials have the discretion to refuse a witness at a disciplinary hearing to "keep the hearing within reasonable limits". Wolff, 418 U.S. at 566. Other appropriate reasons for denying a witness include: "[I]rrelevance, lack of necessity, or the hazards presented in individual cases." (Id.)

The United States Supreme Court explained that "[w]e should not be too ready to exercise oversight and put aside the judgment of prison administrators" due to the nature of prison and the need for discretion. Id. Due process is met when the reason the witness was refused is in accordance with "institutional safety or correctional goals." Ponte v. Real, 471 U.S. 491, 495 (1985) (citing Wolff, 418 U.S. 566). Conversely, due process review is appropriate where evidence of arbitrary decision making is present. Wolff, 418 U.S. at 558.

It is not required that a witness be physically present at a disciplinary hearing. Instead, it is reasonable for a prison official to stipulate to an unavailable witness' testimony. Santibanez v. Havlin, 750 F.Supp.2d 1121, 1131 (E.D. Cal. 2010). In Santibanez, the prisoner's requested witness was no longer employed at the prison. Instead of continuing the hearing, the hearing officer stipulated to the witness' anticipated testimony and took it into

account during deliberation. (Id.) Ultimately, the court found the hearing officer did not violate the prisoner's due process rights by stipulating to the witness' testimony. (Id.)

### B. Analysis

In the facts and circumstances presented here, Petitioner was not denied due process.

Petitioner was charged with resisting staff resulting in the use of force. On April 21, 2009, his disciplinary hearing was held. (Answer, Ex. 5(d), p. 3.)

Petitioner contends that he was denied a witness at his disciplinary hearing, resulting in a violation of his due process rights. At the hearing, Petitioner requested that Inmate Smith testify on his behalf. Inmate Smith was not readily available to testify as he had since been paroled. Petitioner agreed to stipulate Inmate Smith's testimony by signing a statement: "I, I/M Mitchell, agree to stipulate that, I/M Smith would testify that I never attempted to resist by running or spinning away or resist in any physical manner." (Answer, Ex. 5(d), p. 7.) Thereafter, the hearing officer took all evidence into consideration and found Petitioner guilty of resisting staff resulting in the use of force.

The United States Supreme Court standard for relaxed judicial oversight over prison administrators' decisions in disciplinary hearings is appropriate here. Wolff, 418 U.S. at 566. Stipulating to the testimony of Petitioner's requested witness is not an arbitrary decision requiring due process review. See Santibanez, 750 F.Supp.2d at 1131. After the hearing officer stipulated to the witness' testimony, the physical presence of the witness became irrelevant and unnecessary. Accordingly, Petitioner's due process rights under Wolff were not violated as the hearing officer's actions in stipulating to the favorable testimony of the witness ameliorated any negative impact of not having the witness physically present.

Petitioner has not made the required substantial showing of the denial of a constitutional right. Therefore, Petitioner's due process claim lacks merit, and the Court recommends the petition be dismissed.

### C. Habeas Relief is not Warranted in Regard to Petitioner's Due Process Right to Appeal his Disciplinary Hearing

Petitioner contends that he was hindered from exhausting his administrative remedies. Petitioner was found guilty of resisting staff at his first disciplinary hearing on September 16, 2008. Thereafter, Petitioner was granted an appeal for the disciplinary hearing to be reissued and reheard. Petitioner sought to appeal this reissue and rehearing order in an attempt to have the case dismissed instead. At the second disciplinary hearing on April 21, 2009, Petitioner was again found guilty of resisting staff.  Petitioner appealed the second disciplinary hearing straight to the Director's level, thereby bypassing the regular appeals system. By the time Petitioner filed his appeal correctly, it was untimely. The last reasoned decision by the Solano Superior Court found that Petitioner's inability to appeal was "a product of the delay resulting from Petitioner's inexcusable attempt to bypass the second formal level of the inmate appeal process and not of any impropriety or misconduct by prison officials." (Answer, Ex. 4.)

Petitioner claims that he was hindered from appealing the reissue and rehearing order from his first disciplinary hearing and the verdict of his second disciplinary hearing. Yet, the record reveals that both appeals were screened out for cause. (1st Am. Pet. at 65-66.) Plaintiff fails to state a claim. Further, there is no due process right to the specific processing of Plaintiff's inmate appeal. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."). Petitioner thus fails to state a claim against Respondent for violating his due process right to appeal.

## V.  RECOMMENDATION

Accordingly, the Court **RECOMMENDS** that the Petition for the writ of habeas corpus be **DENIED**.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after the date of service of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to

the Objections shall be served and filed within fourteen (14) days after service of the Objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   June 29, 2012                    /s/ *Michael J. Seng*
                                          UNITED STATES MAGISTRATE JUDGE